**B. H. INC., Libelant,**

v.

**ANTHONY M. MEYERSTEIN, Inc.,**
Respondent.

**ANTHONY M. MEYERSTEIN, Inc.,**
Libelant,

v.

**B. H. Inc., Respondent.**
Nos. 19974, 20044.

United States District Court
E. D. New York.
March 1, 1957.

Hagen & Eidenbach, New York City, for B. H. Inc., Henry C. Eidenbach, New York City, of counsel.

Hamilton, Hastings & Garrick, New York City, for Anthony M. Meyerstein, Inc., Herbert F. Garrick, New York City, of counsel.

BRUCHHAUSEN, District Judge.

The above entitled actions, duly consolidated, emanate from a bareboat charter of a barge, entered into between B. H. Inc., its owner and Anthony M. Meyerstein, Inc., dated April 15, 1952.

In the first of the above mentioned libels, B. H. Inc. makes three claims, viz.:

1. Damage to the barge in the sum of $300.

2. Hire of the barge for the period from July 14, 1952 to July 29, 1952, in the sum of $700.

3. Tonnage Tax and Light Money, imposed by the Collector of Customs.

In the second of the above mentioned libels, Meyerstein seeks recovery against B. H. Inc. for alleged repairs made to the barge, during the period of the agreement.

B. H. Inc. contends that their claims are warranted by the provisions of the charter and that Meyerstein's claim has no basis for the same reason.

The witness, Peter F. Hagan, an experienced marine surveyor, testified that he was employed by Meyerstein to inspect and determine the condition of the barge, prior to the making of the charter. In fact, the survey was completed on April 14, 1952 (B.H. Ex. 6), one day prior to the date of the charter. He reported that the barge was in good condition, with the exception of five minor items, noted on the survey. They did not affect its seaworthiness. (S.M. 42)

It appears that the barge was in control of Meyerstein when it went aground while being towed from Norfolk to Miami and sustained damage. The amount of the damage is undisputed.

The Tonnage tax was incurred by reason of the operation of the barge in foreign waters by Meyerstein. The amount thereof is likewise undisputed.

The claim by Meyerstein in its cross-libel is for alleged repairs in a sum exceeding $6,000 made and required to be made to the barge at Miami, prior to the towage of it to the Bahama Islands.

B. H. Inc. contends that Meyerstein is solely liable for all of the claims, by reason of the terms of the agreement (B.H. Ex. 1), and particularly the following mentioned provisions thereof, viz.:

"Rate of Hire: $1,500.00 per month or fraction thereof, all days being charged including Sundays

and holidays. Charter hire for less than one month shall be pro-rated on a daily basis of 1/30th of monthly period. * * *

"Conditions: The B. H. #3 is chartered to you on a bareboat basis without captain.

"Any damage which may be sustained to the barge while under charter to you will be for your account and the barge will continue on hire until necessary repairs are completed.

"It is understood that you are responsible to return the barge in the same condition as when received, ordinary wear and tear excepted, * * *. You will insure the boat for such value including our name in the policy as interest may appear.

"All towage, insurance and other charges of every description which may accrue in connection with the barge during the charter period must be paid by you.

"The required mooring and towing lines for the barge must be furnished by you without any expense, obligation, or liability to the B. H. Inc.

"You will not permit any lien, claims, charge or incumbrance to be placed or imposed upon said barge from your operations or resulting from any claim against you while the barge is under charter to you. If any such lien, claims, charge or incumbrance is filed or asserted you will promptly remove the same.

"You will at all times protect the B. H. Inc. and save it harmless against and from any or all claims and liability arising from or during your possession of the barge. Any loss of or damage to the barge not covered by valid and collectible insurance shall be for your account."

■ Damage to the barge and the hiring charge are express obligations of Meyerstein, according to the agreement, likewise is the Tonnage charge, which is plainly included in the phrase therein, reading: "lien, claims, charge or incumbrance."

As above stated, Meyerstein's claim is for the value of the repairs made to the barge, during the term of the charter. It asserts in its brief "that the barge was not delivered to it in a good, sound and seaworthy condition and that in order to make it good, sound and seaworthy and before the barge would be cleared by the Insurance Company for sea duty, it was necessary to make repairs in Miami, Florida, to the extent of $6,118.13."

■ Not only does Meyerstein fail to submit evidence of the barge's unseaworthiness, but it was accepted by his own surveyor as a seaworthy boat. The fact that Meyerstein was obliged to insure the boat does not cast upon the owner the burden of satisfying the requirements of an insurance company, selected by Meyerstein. No such implication can be gained from an examination of the agreement. To the contrary, it is abundantly clear, that Meyerstein accepted the boat, "as is", at Norfolk. Possibly Meyerstein should have caused the insurance inspection to be made prior to execution of the agreement. At any rate, he assumed obligations, which may not be altered now that the transaction resulted in his disadvantage. In order to thrust the claims upon the owner, there would need be an entirely different agreement than the one to which the parties committed themselves. It is not the function of a court of law to rewrite the agreement, but it is limited to interpretation.

A decree is directed in favor of the libelant, B. H. Inc., with interest and costs, as follows:

1. For $300, for the damage sustained by it.

2. For $700 for the unpaid charter hire.

3. For the amount incurred or paid for the Tonnage and Light taxes.

The cross-libel is dismissed.